Mr. Chief Justice Sharkey
delivered the following opinion.
I concur in holding that the grant'from the -British governor of West Florida, dated 11th February, 1772, to the ancestor of the plaintiffs below, was invalid for want of power in the governor to make it. This result seems to follow, whether the land in dispute was or was not, at the date of the grant, within the limits of West Florida. The preceding opinion proceeds upon the ground that West Florida was bounded on. the north by a line drawn from the mouth of the Yazoo. If that be so, then it seems to me to be conclusively shown that the governor had not, for the reason stated, the power to make the grant. . ,
But it seems to me the evidence preponderates against the conclusion that there ever was an actual extension of the northern boundary of West Florida above the 31st degree of latitude.
The land in dispute lies above the 31st degree of latitude, and below the mouth of the Yazoo. It lies in what was originally a part of the colony of Carolina, which was afterwards divided, and the colony of Georgia established, embracing the land in question. The charter which had been granted to Oglethorpe, was surrendered to the crown in 1752, and thereafter Georgia became a royal colony. The southern boundary had been'a-subject of dispute between Spain and Great Britain, but after the cession of Florida by the former to the latter government, the king, in October, 1763, by proclamation, erected.Florida into two provincial governments called East and West Florida. The *180 northern boundary of West Florida was declared to be at a line drawn on the thirty-first ddgree of north latitude, from the Mississippi riyer to the Apalachicola.
On the request of the governor of West Florida, the board of trade, which then had charge of colonial affairs, afterwards recommended that West Florida should be extended up to a line ■to be drawn due east from the mouth of the Yazoo. The only evidence that this extension was eyer made by the crown, is found in two commissions subsequently issued to governors of the province, which specify the boundary as extending from the mouth of the Yazoo. There was no public proclamation, extending or changing the boundary. The original boundary at latitude thirty-one had been established by proclamation, and this seems to have been the usual mode of establishing boundary in the royal colonies.
■ The colony of Georgia had been previously established, embracing the territory above the thirty-first degree, and its governor continued to exercise authority over it. Here was, evidently, a conflict, and it is difficult at this day to decide the question of superior right. The conduct of Great Britain herself seems to furnish the best criterion.
In this condition things stood at the declaration of independence in 1776. The colonies then became independent, with established and defined boundaries. If that memorable event put an end to the authority of Great Britain over the territory above the 31st degree of latitude, it must have done so because that territory was within the limits of some one of the revolting colonies. The declaration .of independence did not extend oyer any territory which' was not within some of the colonies, nor was there arjy acquisition of territory by conquest, which did not lie within their boundaries. If the territory above the 31st .degree of latitude was a part of the colony of Georgia, the authority of Great Britain over it ceased when Georgia became independent. If, on the other hand, if was part of West Florida, her authority did not cease, as Florida was notone of the revolting colonies.
The treaty with Great Britain seems to be entitled to the *181 greatest weight on this subject, as showing the opinion of that government as to the boundaries of the independent colonies, It did not cede territory to them, either collectively or individually, but it acknowledged their independence as separate states. They were separated and circumscribed by known boundaries. The treaty acknowledged the 3lst degree as the southern boundary ; not that it should thereafter be, but that it was then and should continue so to be. This was an admission that Georgia extended that far down. Or, if it did not, then Great Britain gave away part of, Florida. If so, on what ground was it ceded? None of the colonies pretended to claim any thing by conquest beyond their own limits, nor did they collectively acquire territory by conquest. It would seem to follow that Georgia claimed to the thirty-first degree of latitude, and that her claim, by the treaty, was admitted to be well founded. It is remarkable, too, that the boundary designated in the treaty, corresponds exactly with that which had been established as the northern boundary of Florida by the proclamation of 1763, which at that date was also the southern boundary of Georgia. By declaring herself independent, Georgia did not acquire territory which was not already within her limits, and Great Britain, in acknowledging her independence, did not give her additional territory. The treaty, then, seems to be an admission that Georgia extended to the 31st degree.
To the foregoing evidence may be added, also, the admission of South Carolina. In a controversy between the two states, the boundary of Georgia was admitted by the treaty of Beaufort. The United States, also, have admitted the claim of Georgia to the boundary claimed by her.
Spain, too, who acquired West Florida from Great Britain by the treaty of 1783, has also admitted that it was bounded on the north by the 31st degree of latitude. She claimed, for some time, to the mouth of the Yazoo, on the ground that the colony had been extended that far, but, by treaty made with the United States in 1795, she admitted that the boundary was at latitude 31.
But I regard this question as virtually settled by the decision *182 in Harcourt v. Gaillard, 12 Wheat. 523, which was founded on a patent from the governor of West Florida, hearing date in January, 1777. It was held to be invalid because it was issued after the declaration of independence, and also because it was a grant made flagrante bello by the power which failed in the war. If the land granted had been in West Florida, neither of these reasons could have prevailed, because the declaration of independence did not extend to Florida, and because thát province was not at war with Great Britain, and the decision must have been the other way. The land then claimed lies in the vicinity of that which is involved in the present suit. Indeed, the court expressly admitted that if the land was embraced by the limits of Florida, the grant might have been sustained, But it was held that the territory between the thirty-first degree and the mouth of the Yazoo had never been detached from Georgia by any valid act.
The consequence is, that the grant to Campbell from the British governor of West Florida was destitute of validity, for want of power in that officer. It must depend alone on the articles of cession from Georgia to the United States, which provided for the confirmation of such grants.
On the other points I have nothing to add to the view already taken.